LAW OFFICES
**MORGAN, LEWIS & BOCKIUS LLP**
Richard G. Rosenblatt
502 Carnegie Center
Princeton, New Jersey 08540-6241
+1.609.919.6600
richard.rosenblatt@morganlewis.com

Attorneys for Plaintiff

---

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE ERISA INDUSTRY COMMITTEE,** | |
| **Plaintiff,** | **Civil Action No. _____** |
| **v.** | |
| **ROBERT ASARO-ANGELO, in his official capacity as THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT,** | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **Defendant.** | |

Plaintiff The ERISA Industry Committee ("ERIC"), on behalf of its member companies, hereby files this Complaint against Defendant Robert Asaro-Angelo, in his official capacity as the Commissioner of the New Jersey Department of Labor and Workforce Development, and alleges as follows:

## NATURE OF THE ACTION

1.      ERIC seeks a declaration that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"), expressly preempts the recently enacted New Jersey Senate Bill No. 3170 ("S.B. 3170"), which amends the Millville Dallas Airmotive Plant Job Loss

Notification Act (a/k/a "New Jersey WARN Act").[1]  ERIC also seeks injunctive relief to halt future enforcement of the S.B. 3170 amendments to the New Jersey WARN Act because the amendments are preempted by ERISA.[2]

2.      Prior to the amendments, the New Jersey WARN Act generally required New Jersey private employers with 100 or more full-time workers to provide 60 days' advance notice in the event of a "mass layoff," "transfer" or "termination" of operations at a covered "establishment" within the state and imposed penalties for failure to comply. Under the statute, a "mass layoff" consisted of 500 employees at a single facility (or group of contiguous facilities).

3.      The amended New Jersey WARN Act goes much further.  As explained in detail below, among other things S.B. 3170 decreases the threshold for a "mass layoff" from 500 employees to 50 employees and revises the definition of "establishment" to extend to all facilities within the entire state instead of a single facility.  It also requires covered employers to provide severance pay to all full- and part-time employees impacted by the statute's amended definition of qualifying severance events (instead of merely imposing a financial penalty due to failure to provide the required plant-closing notice).  Accordingly, the amendments considerably increase the ongoing administrative burdens for ERIC member companies covered by the amended law to evaluate when severance pay is owed and to whom and also increases such companies' financial liability in connection with qualifying severance events in the state.

4.      Under 29 U.S.C. § 1144(a), ERISA expressly provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

---

[1]      The WARN Act is a reference to the parallel federal legislation called the Worker Adjustment Retraining and Notification Act ("WARN Act"), 29 U.S.C. §§ 2100 et seq.

[2]      ERIC seeks only to declare void and permanently enjoin the enforcements of the amendments to the NJ WARN Act.  ERIC is not challenging the NJ WARN Act as enacted prior to these amendments.

This preemption provision was enacted by Congress with "the goal . . . to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).  In other words, to encourage employers to offer employee benefit plans, ERISA's preemption provision is intended to make the regulation of such plans "exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981).  And it "was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *McCoy v. MIT*, 950 F.2d 13, 17 (1st Cir. 1991), *cert. denied*, 112 S. Ct. 1939 (1992).  Given this purpose, the language of ERISA's preemption provision has been described by the U.S. Supreme Court as "conspicuous for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990), and "deliberatively expansive," *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 324-25 (1997).  *See also Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016).

5.      Thus, any state law may "relate to" and be preempted by ERISA if it requires employers to create an "employee benefit plan" covered by ERISA, even if the law does not conflict with ERISA's own requirements.  *See District of Columbia v. Greater Wash. Bd. of Trade*, 113 S.Ct. 580, 583 (1992).  In that regard, the Supreme Court has held that severance pay plans, like pension and health plans, can be subject to ERISA when such plans require "an ongoing administrative program to meet the employer's obligations." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 12 (1987).  Consistent with *Fort Halifax*, the Third Circuit has held that an employer-offered severance program is covered by ERISA when it requires an ongoing "administrative scheme."  *See Pane v. RCA Corp.*, 868 F.2d 631, 633-35 (3d Cir. 1989) (finding that a severance plan was covered by ERISA because implementing that plan required an

"administrative scheme"). Such an administrative scheme is present, for example, when a severance plan requires employer discretion to determine eligibility for benefits on an ongoing basis. *Id.*

6. Here, S.B. 3170's amendments to the New Jersey WARN Act require employers to create, in effect, severance pay plans that require an ongoing administrative scheme because, among other things:

a. Employer discretion is necessary to determine who is eligible for severance benefits. Employees who are terminated for misconduct, who retire or voluntarily leave their employment, or who are offered similar employment with the employer within New Jersey and within 50 miles of their existing work location, are not entitled to severance under the amendments to the New Jersey WARN Act. Thus, employers have to consider, as to each individual employee, whether the employee qualifies for severance pay pursuant to the Act. Many courts have held that this type of discretionary decision-making regarding who is eligible for severance pay is indicative of a severance plan that requires an ongoing administrative scheme and is governed by ERISA. *See, e.g.*, *Lempa v. Rohm & Haas Co.,* No. 05-0985, 2007 WL 878496, at *3 (E.D. Pa. Mar. 20, 2007) ("The administrators of the SBP must determine whether an employee was terminated other than for cause or if a material breach occurred. The presence of such discretion militates towards the applicability of ERISA.").

b. Employers must establish an ongoing administrative program to continuously monitor all New Jersey terminations to determine when severance benefits must be paid. Specifically, given the amendments' new definition of "mass layoff," employers must monitor all of their terminations in New Jersey, as well as employees "reporting to" a New Jersey location, and pay severance benefits whenever 50 or more such employees are terminated

(without cause) during any 30-day period.  Thus, an employer must evaluate each employee's termination not only because of its impact on that employee's eligibility for severance, but also to evaluate the eligibility of other employees whose employment is terminated in New Jersey during the preceding or succeeding 30 days.

      c.      By reducing the number of employee terminations that trigger the statutory requirements from 500 to 50, the amended New Jersey WARN Act makes it much more likely for larger employers, including ERIC member companies which individually have at least 10,000 employees, to have multiple "mass layoffs" in a year, and to regularly have "mass layoffs" in successive years.  This further exemplifies the ongoing administrative scheme required of employers to comply.

      d.      Defining "establishment" with reference to the entire state instead of a single facility requires employers to set up new systems and operations across different facilities within the state in order to comply with the amended statute.

7.      Accordingly, ERISA preempts S.B. 3170's amendments to the New Jersey WARN Act, and it should be declared preempted, with all enforcement of its requirements enjoined.

## PARTIES, JURISDICTION AND VENUE

8.      ERIC is a nonprofit trade association with its principal place of business in Washington, D.C.

9.      ERIC represents the interest of employers with 10,000 or more employees that sponsor health, retirement, and other benefit plans governed by ERISA in their capacity as sponsors of those benefit plans.  ERIC's member companies voluntarily provide benefits through such plans that cover millions of workers and their families across the country.  ERIC member companies are large employers that are leaders in every sector of the economy, with employees

in every state, including many member companies that employ thousands of individuals in this state.  Many ERIC member companies have ERISA severance plans that offer severance benefits to their employees nationwide under the circumstances and conditions set forth in plan documents, and for the amounts set forth in the plan documents.

10.     ERIC is a national association that advocates for large employer plan sponsors on health, retirement, and compensation public policies on federal, state, and local levels.  ERIC's mission includes lobbying and litigation advocacy for nationally uniform laws regarding employee benefits as contemplated by ERISA, so that ERIC's member companies may lawfully operate under ERISA's protection from a patchwork of different and conflicting state and local laws in additional to federal law.  To that end, ERIC has previously brought suit against governmental authorities to challenge state and local laws and regulations on the grounds of ERISA preemption.  Simply put, ERIC advocates to preserve ERISA's national uniformity, which protects employers and employees from disparate state and local regulations of health and retirement plans.

11.     ERIC brings this action against Defendant Robert Asaro-Angelo, in his official capacity as the Commissioner of the New Jersey Department of Labor and Workforce Development (the "Commissioner" or "Defendant").  N.J. Stat. Ann. §§ 34:1-6 and 34:1A-6 authorize the Commissioner to enforce the provisions of the New Jersey WARN Act, as amended by S.B. 3170 and codified under N.J. Stat. Ann. § 34:21-2.  New Jersey's laws also permit the Commissioner, directly and through the supervision, instruction, and/or control of others, to impose liabilities, fines and penalties against those whom he or his department deem to have violated the provisions of the various laws that the Commissioner is charged with enforcing.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §

1331 because this case raises questions arising under federal law and implicates the Supremacy

Clause in Article VI, Section 2 of the United States Constitution.  *See Shaw v. Delta Air*

*Lines*, 463 U.S. 85, 96 n.14, 103 S.Ct. 2890 (1983) ("A plaintiff who seeks injunctive relief from

state regulation, on the ground that such regulation is preempted by a federal statute which, by

virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question

which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.").  ERIC also seeks

a declaration of its rights in this case of actual controversy pursuant to 28 U.S.C. §§ 2201 et seq.

13.     This Court has personal jurisdiction over Defendant because he resides within the

District of New Jersey.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2)

because the claims asserted in this Complaint are based on events occurring in this District, and

Defendant maintains offices and performs his official duties within this District.

15.     ERIC has standing to pursue this action on behalf of its member companies

because (a) ERIC's membership includes large employers with headquarters or a significant

number of employees in New Jersey who will suffer direct and adverse impact from the

enforcement of S.B. 3170's amendments to the New Jersey WARN Act and would otherwise

have standing to sue in their own right; (b) the ERISA preemption interest that ERIC seeks to

protect in this action is germane to and at the core of ERIC's mission; and (c) the relief sought

(i.e., injunctive and declaratory) does not require the participation of ERIC's individual member

companies because it is based on legal and not factual grounds.  *See Pa. Psychiatric Soc'y v.*

*Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (citing *Hunt  v. Wash. State*

*Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

16.     ERIC also has direct standing to pursue this action because it has and will continue to suffer a direct and adverse impact from the enforcement of S.B. 3170's amendments to the New Jersey WARN Act.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (finding an injury-in-fact and standing where the organization alleged that the unlawful conduct "perceptibly impaired" its ability to provide counseling and referral services by requiring it to "devote significant resources to identify and counteract the defendant's [unlawful conduct]); *N.J. Civil Justice Inst. v. Grewal*, No. 19-17518, 2020 WL 4188129, at *4 (D.N.J. July 21, 2020) (finding that the organization had direct standing because it alleged that it needed to divert resources by way of developing educational materials and organizing meetings with its members to address a state law that the organization asserted is preempted by federal law). Specifically, enforcement of S.B. 3170's amendments would directly conflict with ERIC's mission in support of nationally uniform laws regarding employee benefits as contemplated by ERISA, and ERIC has had to divert and expend its resources in order to address the harms posed by S.B. 3170's amendments and educate its member companies on the implications of the amendments.

## BACKGROUND

### A.     S.B. 3170's Amendments to the New Jersey WARN Act Impose Significant Administrative Burdens on Employers

17.     On January 21, 2020, Governor Murphy signed into law S.B. 3170, amending the New Jersey WARN Act.  2019 NJ Sess. Law Serv. Ch. 423 (Senate Bill No. 3170), codified as N.J. Stat. Ann. §§ 34:21-1 et seq.

18.     Prior to the amendments, the New Jersey WARN Act required employers with 100 or more full-time employees to provide 60 days' notice to affected full-time employees in

the event of a "mass layoff" or "transfer or termination of operations," and imposed certain penalties for failure to comply.

19.     S.B. 3170's amendments made sweeping changes to the Act as follows:

        a.     **Mandatory Severance Payments.**  Previously, employers covered under the New Jersey WARN Act were only required to make payments to certain employees as a penalty if they failed to provide the required amount of notice of termination or layoff.  Under the amended law, however, an employer conducting a "mass layoff" or a "transfer" or "termination" of operations must pay each affected employee one week of severance for each full year of his/her employment.  This is true even if the employer provides sufficient and timely notice.  N.J. Stat. Ann. § 34:21-2.  If affected employees are entitled to severance under a collective bargaining agreement "or for any other reason," the employer is required to pay either the statutorily mandated severance or the severance provided for such "other reason," whichever is greater.  *Id.*  Many employers, including ERIC's member companies, offer ERISA-governed severance benefits to their employees nationwide under the terms and conditions of ERISA-governed severance plans and conditioned on their acceptance of a general release.  Now, with the amendments to the New Jersey WARN Act, employers will be compelled to provide severance benefits to employees in New Jersey without a release, or they must alter the terms of their existing severance plans to provide additional severance pay beyond the amount required by the amended Act if they want to still receive a release from the affected employees.

        b.     **Expansion of "Mass Layoff" Definition.**  The term "mass layoff" was previously defined as the termination of employment within any 30-day period (or 90-day period within which two or more group terminations can potentially be aggregated) of either (1) 500 or more full-time employees at an establishment, or (2) 50 or more full-time employees comprising

at least 33% of the full-time employees at an establishment.  The amendments remove the 500-employee and 33% requirements, and count both employees "at" an establishment and employees "reporting to" an establishment.  Accordingly, 50 or more qualifying terminations will trigger notice and severance requirements regardless of what percentage of the workforce that may constitute, and regardless of whether those employees work in one location, are at different locations throughout the State, or "report[] to" a location in New Jersey.  N.J. Stat. Ann. § 34:21-1.

> c.      **Expansion of "Establishment" Definition.**  Previously, New Jersey WARN Act analysis was site-specific, conducted separately for each different "establishment," which was defined as either a single location operated for longer than three years or a group of *contiguous* such locations, such as a group of buildings forming an office park.  The amendments remove "contiguous" from this definition, meaning that *all* of an employer's facilities within New Jersey are considered one aggregated "establishment," with only temporary construction sites and operations in effect for three years or less being excluded.  *Id.*  For example, an employer with 50 facilities throughout the state that separates from employment one employee at each of those facilities (all within a 30-day period) will have conducted a "mass layoff" triggering advance notice and severance requirements—regardless of where in the state those facilities are located or if the terminations were related.

> d.      **Expansion of Covered Employees.**  Before the amendments, the separation of "part-time" employees (working fewer than 20 hours per week on average or employed for fewer than 6 of the preceding 12 months) was not counted when calculating whether a New Jersey WARN event had occurred.  The amendments remove the distinction between "full-time" and "part-time" employees, making it even more likely that "mass layoff"

triggering of the Act will occur.  *Id.*  Indeed, now all employees (regardless of their hours or the length of their employment) count toward New Jersey WARN trigger thresholds, and if the New Jersey WARN Act is triggered, all employees must receive notice and severance.

       e.    **Expansion of Covered Employers.**  Furthermore, the New Jersey WARN Act, as amended, now covers all employers with 100 or more employees (including employees outside the state), regardless of how many are "full time" or "part time"; previously only those employers with 100 *full-time* employees were covered.  *Id.* The amendments also expand the definition of "employer" to cover "any individual, partnership, associate, corporation, or any person or group of persons acting directly or indirectly in the interest of [the employing entity]," which would implicate any companies nationwide with subsidiaries or affiliate entities employing individuals in New Jersey.  *Id.*  This expansion will require many nationwide companies with subsidiaries or affiliates that employ individuals in New Jersey to revise any already existing severance plans to comply with the amended statute.

       f.    **Increased Notice Period.**  Before S.B. 3170, the New Jersey WARN Act required covered employers to provide 60 days' written notice to affected employees (and any collective bargaining units or other employee representatives) and certain state and local government officials of a mass layoff, transfer of operations, or termination of operations.  *Id.* The new law increases the required period of advance notice to 90 days for covered employers. If this increased notice requirement is not met, employers must add 4 weeks of severance pay for each affected employee. *Id.* § 34:21-2.

    20.    Notably, S.B. 3170 did not change the New Jersey WARN Act's exclusion of terminations for misconduct, retirement, voluntary departure, or similar offer of employment with the employer within 50 miles.  However, the amendments in S.B. 3170 mark the first time

that severance pay eligibility under the New Jersey WARN Act for an employee is dependent on whether that employee's employment was involuntarily terminated for reasons other than misconduct, or was terminated because of misconduct, retirement, or voluntary departure, or whether the employee received a similar offer of employment within 50 miles of the previous place of employment and within New Jersey.  *Id.*

21.     On April 14, 2020, Governor Murphy signed into law further amendments to the New Jersey WARN Act in light of the COVID-19 pandemic.  Those amendments will exclude layoffs caused by any "national emergency" (among other causes such as fire, flood, or natural disaster) from the definition of "mass layoff," and (2) delay the effective date of the prior amendments by 90 days after the Governor's declaration of emergency expires.  2020 NJ Sess. Law Serv. Ch. 22 (Senate Bill No. 2353).  The Governor's executive order declaring a state of emergency is scheduled to expire on August 31 (unless it is extended again), which would mean that the amended New Jersey WARN Act will become effective on November 29.

**B.     ERISA Preempts Laws, Like The Amended New Jersey WARN Act, Which Mandate Severance Pay Plans That Require An Ongoing Administrative Scheme.**

22.     Congress enacted ERISA to regulate any employee benefit plan established or maintained by a private employer or employee organization nationwide.  29 U.S.C. § 1003(a). However, "ERISA does not guarantee substantive benefits."  *Gobeille*, 136 S.Ct. at 943; *see also Conkright v. Frommert*, 559 U.S. 506, 516 (2010) ("Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place.").  Rather, ERISA leaves employers free "for any reason at any time, to adopt, modify, or terminate [benefit] plans."  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

23.     In enacting ERISA, Congress sought to encourage the creation of employee benefit plans and "'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'" *Conkright*, 559 U.S. at 517 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)). "ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'" *Id.* (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002)).

24.     Thus, uniformity in the regulation and administration of ERISA plans was paramount to Congress.  "Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of "'minimiz[ing] the administrative and financial burden[s]' on plan administrators – burdens ultimately borne by the beneficiaries." *Gobeille*, 136 S. Ct. at 944 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 149-50 (2001)).

25.     With this purpose in mind, Congress enacted ERISA's preemption section, which states the broad preemptive effect of the statute, providing that "the provisions of [ERISA] . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) and not exempt under section 1003(b)." 29 U.S.C. § 1144(a).  "State law[s]" are defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," with "State," in turn, including "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate directly or indirectly, the terms and conditions of employee benefit plans covered by [ERISA]." *Id.* § 1144(c)(1)-(2).

26.     Accordingly, "ERISA preempts all state laws insofar as they relate to employee benefit plans, even laws which are 'a help, not a hindrance,' to such plans, and regardless of whether there is a 'comfortable fit between a state statute and ERISA's overall aims.'"  *Simas v. Quaker Fabric Corp. of Fall River*, 6 F.3d 849, 852 (1st Cir. 1993) (quoting *McCoy*, 950 F.2d at 18, *cert. denied*, 504 U.S. 910).  Moreover, "a state statute that obligates an employer to establish an employee benefit plan is itself preempted even though ERISA itself neither mandates nor forbids the creation of plans."  *Id.*

27.     In *Fort Halifax*, the Supreme Court ruled that ERISA did not preempt a Maine statute requiring employers who close or relocate a worksite with 100 or more employees to make severance payments to employees who lost their jobs.  482 U.S. at 1-4.  Under the Maine law, employers were required to pay severance to terminated employees who had worked at the worksite for at least three years in an amount equal to one week's pay for each year of employment.  *Id.* at 4-6.

28.     At the time of the Fort Halifax decision, the Maine statute read as follows:

> Severance pay. Any employer who relocates or terminates a covered establishment shall be liable to his employees for severance pay at the rate of one week's pay for each year of employment by the employee in that establishment. The severance pay to eligible employees shall be in addition to any final wage payment to the employee and shall be paid within one regular pay period after the employee's last full day of work, notwithstanding any other provisions of law.

*See id.* at 4 n.1 (quoting Me. Rev. Stat. tit. 26, § 625-B as it was drafted at the time).

29.     The Supreme Court's opinion recognized that severance pay plans could be considered employee benefit plans subject to ERISA.  *Id.* at 7.  However, the Court held that the Maine severance law did not establish or require an ERISA-covered plan because it did not require "an ongoing administrative program to meet the employer's obligations."  *Id.* at 12.

Instead, the Court held that the law only required "a one-time, lump-sum payment triggered by a single event" with "no administrative scheme whatsoever to meet the employer's obligation." *Id.*

30.     After *Fort Halifax*, the Court of Appeals for the First Circuit considered whether ERISA preempts a Massachusetts statute requiring the payment of severance benefits in *Simas*, 6 F.3d at 849.  There, the First Circuit considered whether ERISA preempted a Massachusetts law that required employers to pay severance benefits to employees who were terminated within a certain period following a corporate takeover.  Under that law, employers were required to make severance payments based on weekly compensation and years of service to employees who were terminated within 24 months after a "transfer of control" of their employer, provided that the employees were not terminated for cause.  *Id.* at 851-52.  The First Circuit held that the Massachusetts law was preempted by ERISA because it required the type of "ongoing administrative scheme" that gives rise to an ERISA-covered plan.  *Id.* at 853-55.  In reaching this decision, the First Circuit distinguished the *Fort Halifax* holding by noting how the Massachusetts statute required more administrative burdens than the Maine statute in *Fort Halifax*.

31.     The Third Circuit has held that an employer-offered severance program is covered by ERISA when it requires an "administrative scheme."  *Pane*, 868 F.2d at 633.

32.     Under this framework, numerous courts in the Third Circuit have held that severance plans are covered by ERISA when eligibility for severance is restricted to employees terminated without cause because that requires the type of employer discretion that ERISA seeks to regulate.  *See, e.g.*, *Makwana v. Express Scripts, Inc.*, No. 14-7096, 2015 WL 4078048, at *14 (D.N.J. July 6, 2015) (holding that an employer's severance program was an ERISA plan (not

just a payroll practice) in part because employees terminated for cause were not eligible to receive severance); *Darlin v. Consol. Rail Corp.*, 93 F. Supp. 2d 599, 601 (E.D. Pa. 2000) (same).

33.     Courts have also held that severance plans evidencing an employer's intent to administer severance benefits over a prolonged or indefinite period of time are covered by ERISA.  *See, e.g.*, *Way v. Ohio Cas. Ins. Co.*, 346 F. Supp. 2d 711, 716 (D.N.J. 2004) (holding that employer-offered severance plan is covered by ERISA because the plan indicated the employer's intent to provide severance benefits on an ongoing basis rather than a one-time event); *see also United Paperworkers Intern. Union Loc. 1468 v. Imperial Home Decor Grp.*, 76 F. Supp. 2d 179 (D.R.I. 1999) (holding that ERISA preempts a Rhode Island law that required severance payments for certain terminations after a corporate takeover, because the law required employers to implement an "ongoing administrative mechanism for determining eligibility").

### CLAIM FOR DECLARATORY RELIEF
### ERISA Preemption

34.     ERIC incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

35.     ERISA preempts state and local laws that "relate to" ERISA plans. 29 U.S.C. § 1144(a).  State and local laws that have a "reference to" or "connection with" ERISA plans "relate to" them and are preempted.  *Gobeille*, 136 S. Ct. at 943.

36.     S.B. 3170's amendments to the New Jersey WARN Act have a "reference to" and "connection with" ERISA plans, and therefore are preempted under ERISA's preemption provision, because the amendments mandate the creation of severance pay plans that require an ongoing administrative scheme that must be governed by ERISA exclusively.

37.     For instance, the New Jersey WARN Act as amended requires ongoing administration and discretion indicative of an ERISA-covered plan because it requires an employer to determine whether each employee was involuntarily terminated not for misconduct, or whether the employee was terminated because of misconduct, retirement, or voluntary termination, and also whether the employee was offered a similar job within 50 miles and within New Jersey.  N.J. Stat. Ann. § 34:21-1.

38.     In other words, discretion is necessary to determine which employees are eligible for severance pay *and* whether severance pay must be paid at all under the amended New Jersey WARN Act.  Entire lawsuits have been litigated under ERISA with employees challenging whether their termination of employment was voluntary or involuntary, or was because of misconduct/cause or not.  *See, e.g.*, *Darlin*, 93 F. Supp. 2d at 601 (holding that a severance plan is governed by ERISA because "plan eligibility is restricted to employees who 'are terminated (or constructively terminated) without cause'—a standard involving the use of subjective discretion by the plan administrator," in a dispute over whether the plaintiff is entitled to severance benefits); *Fresolone v. Fiserv, Inc.*, No. 12-3312, 2013 WL 135111, at *1 (D.N.J. Jan. 9, 2013) (denying motion to dismiss in a case where plaintiff brought a claim under ERISA for severance benefits that hinged on whether he was terminated for cause).

39.     As noted above, courts have consistently held that severance pay plans are governed exclusively by ERISA when such plans exclude employees terminated for misconduct or other reasons that call for discretion regarding eligibility of severance benefits.  *See supra* ¶ 31.

40.     The amendments to the New Jersey WARN Act also require an ongoing administrative program to continuously monitor all New Jersey terminations to determine when

severance benefits must be paid.  Specifically, given the amendments' new definition of "mass

layoff," and "establishment," employers will need to monitor all of their terminations in New

Jersey and terminations of employees "reporting to" a New Jersey location, then pay severance

benefits whenever 50 or more employees at or reporting to any location within the state are

terminated (depending on the reason for the termination) during any 30-day period.  N.J. Stat.

Ann. § 34:21-1.

41.     This analysis, in turn, intersects with the evaluation of the circumstances of each

individual termination.  For example, if an employer terminates a total of 55 employees in a 30-

day period, but six of those terminations were for misconduct (or retirement or relocation), then

the employer may not owe severance to *any* of its employees.

42.     Here, to comply with the New Jersey WARN Act as amended, employers will

need to establish ongoing systems that track information about each employee termination that

occurs in New Jersey and for employees reporting to a location in New Jersey.  Specifically,

large employers in particular will need to determine whether there will be 50 or more

terminations across multiple facilities during any particular 30-day period, whether any of those

terminations will be for cause (or other reasons impacting eligibility), and then provide 90 days'

notice. Then, continuous monitoring during the 90-day period will be necessary to track if any of

those employees find other work with the employer (within 50 miles of the prior worksite) or

leave voluntarily  – either of which could impact whether the terminations fit the "mass layoff"

definition.  After this period of tracking and monitoring, the employer must provide severance

benefits whenever 50 employees are terminated (without cause) within 30 days.  As noted above,

because terminations for misconduct are excluded, employers cannot simply just count the

number of terminations.  Instead, employers will need to examine the circumstances of each

termination and count only the eligible terminations toward the 50-employee threshold. Likewise, employers will have to evaluate other terminations on a rolling 30-day basis to see if the 50-employee threshold is satisfied.

43.     Employment turnover and terminations are a regular part of conducting business for all employers, but especially for large employers like ERIC member companies with substantial presences in New Jersey.  This is true even where such employers also are hiring employees in other locations or for other job functions.  And given the current global economic recession it is possible and even likely that large employers could trigger the S.B. 3170 thresholds every year, and multiple times per year.  Even for medium-sized employers, they will have to constantly evaluate whether they are triggering S.B. 3170 eligibility.  In other words, the S.B. 3170 requirements are not just one-time-events occasioned by the complete shut-down of operations in the State, but rather require ongoing administration.[3]

44.      If other states were allowed to pass similar laws but with different (lower or higher) thresholds, or different conditions for inclusion or exclusion from severance eligibility, or with different severance amounts, then employers would be subject to the precise problems that ERISA preemption was intended to avoid.

45.     Accordingly, S.B. 3170's amendments to the New Jersey WARN Act should be declared void as preempted by ERISA.  The amendments undermine the regime of nationally

---

[3]     In addition to tracking employee terminations to determine if and when the amended New Jersey WARN Act will require severance payments, the Act also requires employers to provide 90 days' notice to covered employees in advance of their terminations or pay an additional four weeks of severance to each employee if notice if not given.  Thus, to properly determine the amount of severance benefits required by the law, employers will be required to monitor the delivery of these notices on an employee-by-employee basis.  While this notice requirement by itself may not implicate ERISA preemption, it adds yet another layer of ongoing administrative responsibilities that was not present in *Fort Halifax*.

uniform employee benefit plans envisioned in ERISA and protected by ERISA's preemption provision.

### CLAIM FOR INJUNCTIVE RELIEF

46.     ERIC incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

47.     When S.B. 3170's amendments to the New Jersey WARN Act become effective, Defendant should be enjoined from enforcing the Act as amended because the amendments are preempted by ERISA.

48.     If enforced, the New Jersey WARN Act as amended will cause ERIC's member companies to suffer irreparable harm for which there is no adequate remedy at law because ERIC's member companies will be subject to a law that is invalid and preempted by ERISA and will be compelled to incur the cost of compliance with an invalid law.

49.     For all of the reasons previously explained, the harm to ERIC's member companies cannot adequately be compensated by monetary damages, is irreparable absent injunctive relief, and is redressable only by appropriate injunctive relief enjoining Defendant from enforcing the New Jersey WARN Act as amended.

50.     The balance of equity between ERIC and Defendant and the overall public interest is served by the favor of an injunction.

**WHEREFORE, ERIC respectfully requests that this Court:**

a.      Declare, pursuant to 28 U.S.C. § 2201, that ERISA preempts S.B. 3170's amendments to the New Jersey WARN Act;

b.      Enjoin Defendant from implementing or enforcing any requirements under the New Jersey WARN Act as amended by S.B. 3170; and

        c.      Grant ERIC such additional or different relief that this Court may deem

appropriate.

Dated:  August 6, 2020                    Respectfully submitted,


*/s/ Richard G. Rosenblatt*
Richard G. Rosenblatt
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center,
Princeton, New Jersey 08540-6241
+1.609.919.6600

Jeremy P. Blumenfeld
Eric C. Kim
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103-2921
+1.215.963.5000

Attorneys for Plaintiff The ERISA Industry
Committee