NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THE ERISA INDUSTRY COMMITTEE,

Plaintiff,

v.

ROBERT ASARO-ANGELO,

Defendant.

Case No. 3:20-cv-10094 (BRM) (TJB)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Robert Asaro-Angelo's ("Defendant" or "Commissioner")[1] Motion to Dismiss Plaintiff the ERISA Industry Committee's ("Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (ECF No. 10.) Plaintiff opposed the Motion (ECF No. 12), and Defendant filed a reply (ECF No. 15). Having reviewed the filings submitted in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendant's Motion to Dismiss is **DENIED**.

**I.    BACKGROUND**

Plaintiff is a Washington, D.C. nonprofit trade association that "represents the interest[s] of employers with 10,000 or more employees that sponsor health, retirement, and other benefit plans governed by" the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et*

---

[1] This action is brought against Defendant in his official capacity as the Commissioner of the New Jersey Department of Labor and Workforce Development.

*seq.* ("ERISA"). (ECF No. 1 ¶¶ 8–9.) Plaintiff advocates and lobbies for its employer members "to preserve ERISA's national uniformity, which protects employers and employees from disparate state and local regulations of health and retirement plans." (*Id.* ¶ 10.)

Plaintiff's Complaint concerns recent amendments to the Millville Dallas Airmotive Plant Job Loss Notification Act, N.J. Stat. Ann. §§ 34:21-1, *et seq.* ("WARN Act"). (*See generally id.*) On January 21, 2020, New Jersey Governor Phil Murphy "signed into law S.B. 3170, amending the New Jersey WARN Act." (*Id.* ¶ 17 (citing 2019 N.J. Sess. Law Serv. Ch. 423).) Prior to the 2020 amendments, the WARN Act "generally required New Jersey private employers with 100 or more full-time employees to provide [sixty] days' advance notice in the event of a 'mass layoff,' 'transfer' or 'termination of operations' at a covered 'establishment' within the state and imposed penalties for failure to comply." (*Id.* ¶¶ 2, 18.) The amendments, *inter alia*, (1) "decrease[] the threshold for a 'mass layoff' from 500 employees to [fifty] employees"; (2) "revise[] the definition of 'establishment' to extend to all facilities within the entire state instead of a single facility"; and (3) "require[] covered employers to provide severance pay to all full- and part-time employees impacted by the statute's amended definition of qualifying severance events (instead of merely imposing a financial penalty due to failure to provide the required plant-closing notice)." (*Id.* ¶¶ 3, 19.)

On August 6, 2020, Plaintiff filed its Complaint against Defendant, in his official capacity, for declaratory and injunctive relief. (ECF No. 1.) Plaintiff seeks a declaration from the Court that ERISA "expressly preempts" the WARN Act amendments. (*Id.* ¶¶ 1, 45; *see also id.* ¶ 3 (alleging the WARN Act amendments "considerably increase the ongoing administrative burdens for [Plaintiffs'] member companies covered by the amended law to evaluate when severance pay is owed and to whom and also increase[] such companies' financial liability in connection with

qualifying severance events in the state").) Plaintiff also seeks to enjoin enforcement of the amended WARN Act's requirements. (*Id.* ¶¶ 7, 47.) On October 26, 2020, Defendant filed a Motion to Dismiss. (ECF No. 10.) On December 7, 2020, Plaintiff filed an Opposition (ECF No. 12), and on December 28, 2020, Defendant filed a Reply (ECF No. 15).[2]

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside the pleadings." *Id.* (citation omitted). Therefore, when a factual challenge is made, "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348–49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely

---

[2] On May 19, 2021, Plaintiff filed a Motion for Summary Judgment. (ECF No. 16.) The Court will address this Motion in due course.

because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts 'must demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (citing *Mortensen*, 549 F.2d at 892 (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

### B. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral*

*to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III. DECISION

#### A. *Ex parte Young*

Defendant first argues he lacks enforcement authority as Commissioner under the WARN Act and, instead, may only establish a response team to "provide appropriate information, referral[,] and counseling" to employers, as well as workers facing plant closings or mass layoffs. (ECF No. 10-1 at 7, 10.) According to Defendant, former, laid-off employees—and not Defendant as Commissioner—may enforce WARN Act violations through private causes of action. (*Id.* at 10 (citing N.J. Stat. Ann. § 34:21-6); *see also id.* at 11 ("Thus, the clear and unambiguous language of the statute reveals that the Commissioner's role involving the New Jersey WARN Act is purely remedial.").) Defendant also asserts "even assuming that the Commissioner has general enforcement authority over violations of the [WARN] Act, Plaintiff has made no allegations that the Commissioner has either enforced or threatened to enforce the statute." (*Id.* at 11.) Defendant, accordingly, argues his lack of enforcement authority renders him an improper defendant in this action. (*Id.* at 8, 12.)

Plaintiff argues Defendant does, in fact, possess authority to enforce the WARN Act. (ECF No. 12 at 8 (citing N.J. Stat. Ann. § 34:1-6).) Moreover, Plaintiff asserts "even apart from the clear enforcement authority provided in N.J. Stat. Ann. § 34:1-6, the Commissioner's undisputed responsibilities in connection with the WARN Act separately establish that" he is a proper defendant in this action. (*Id.* at 9.) Plaintiff notes the WARN Act requires Defendant "to establish a 'response' team to provide information and counseling on compliance to employers and employees when an event triggers the Act's requirements." (*Id.* at 9 (citing N.J. Stat. Ann. § 34:21-5).) According to Plaintiff, "[w]hile these responsibilities may not require the

Commissioner to adjudicate or prosecute violations of the NJ WARN Act, they establish a clear connection between the Commissioner and the Act's enforcement." (*Id.* at 9–10.) The Court agrees.

The Eleventh Amendment prohibits private citizens from bringing suit against states and their departments and agencies in federal court. *See MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001) (collecting cases). An exception to this prohibition is the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908), "under which individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." *MCI Telecomm.*, 271 F.3d at 506. "Such a suit, however, cannot simply seek to make the state officials 'representative[s] of the state.'" *Const. Party of Pa. v. Cortes*, 824 F.3d 386, 396 (3d Cir. 2016) (quoting *Young*, 209 U.S. at 157). Rather, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer *must have some connection with the enforcement of the act*[.]" *Young*, 209 U.S. at 157 (emphasis added).

N.J. Stat. Ann. § 34:1-6 provides the Commissioner of the New Jersey Department of Labor and Workforce Development "shall enforce the provisions of this title[.]" At this stage of the litigation, this provision alone may be sufficient to demonstrate the action is not barred by the Eleventh Amendment under *Ex parte Young*. *See, e.g.*, *PDX North, Inc. v. Wirths*, Civ. A. No. 15-7011, 2016 WL 3098176, at *5 (D.N.J. May 31, 2016) ("In addition, the Court finds that [p]laintiff has sufficiently pled that, pursuant to [N.J. Stat. Ann. §] 34:1-6, [defendant], in his official capacity as Commissioner of the Department of Labor and Workforce Development of the State of New Jersey, is authorized to enforce the [statutes in question]."). However, even assuming § 34:1-6 does not invoke *Ex parte Young*, Defendant's responsibilities under the WARN Act do.

The Third Circuit has "held that even 'entirely ministerial' duties can be sufficient under *Young*, because 'the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights.'" *Cortes*, 824 F.3d at 396 (quoting *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980)). For example, in *Cortes*, state officials argued they had no connection to the enforcement of two election law provisions, describing themselves as bystanders at best. *Id.* at 395–96; *see also id.* at 397 ("This is because they have 'no ability' to prevent private suit under the statute or to prevent how the Commonwealth Court will rule on the challenge."). The *Cortes* court disagreed, holding, *inter alia*, one of the officials was "bound up" in the statute's challenge process because the statute "requir[ed] him to open his office on the last day available for . . . objections to nomination petitions to be filed[.]" *Id.* at 398. The *Cortes* court held "while this reference [did] not bestow upon the Secretary an active role in the challenge process, *it certainly create*[*d*] *at least a minor administrative role in the challenge process*[.]" *Id.* (emphasis added)). Similarly here, under the WARN Act, Defendant is to establish a response team "as rapidly as possible[] to workers who are, or may be subject to plant closings and mass layoffs," N.J. Stat. Ann. § 34:21-5(a), and provide information, referral, and counseling regarding, *inter alia*, "[e]mployee rights based on [the WARN Act] or any other law which applies to employees with respect to wages, severance pay, benefits, pensions or other terms of employment as they relate to the termination of employment[.]" N.J. Stat. Ann. § 34:21-5(b)(2)(c). One such right is that of aggrieved or former employees to initiate suit in the New Jersey Superior Court for violations of the WARN Act for costs, attorneys' fees, and compensatory damages. N.J. Stat. Ann. § 34:21-6. Therefore, like the state officials in *Cortes*, by informing aggrieved and former employees "as rapidly as possible" of their right to bring an action under the WARN Act, Defendant has "at least a minor administrative role in the challenge" and enforcement process.

*Cortes*, 824 F.3d at 398; *see also Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 240 n.10 (3d Cir. 2020) (finding "sufficiently specific statutory obligations" for an *Ex parte Young* claim where the governor was required to (1) inform other government entities of the state legislature's decision to withdraw from an employment commission, thereby triggering the statutory countdown to the withdrawal, and (2) inform the state legislature he did so).

The Court, therefore, finds Defendant, by his authority pursuant to N.J. Stat. Ann. § 34:1-6 and his role in the WARN Act challenge process, has a sufficient connection to the enforcement of the WARN Act as required by *Ex parte Young*.

Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint on this ground is **DENIED**.

### B. Standing

Defendant next argues Plaintiff lacks both organizational and associational standing to pursue this action. Standing under Article III, § 1 of the Constitution contains three elements: (1) "the invasion of a concrete and particularized legally protected interest and resulting injury in fact that is actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of, meaning that the injury must be fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (citations omitted). Defendant challenges Plaintiff's standing as it relates to the injury-in-fact and causation elements of standing. (ECF No. 10-1 at 17–19.)

In *Blunt*, the Third Circuit described the injury-in-fact element of standing as follows:

> An injury is "concrete" if it is real, or distinct and palpable, as opposed to merely abstract, and is sufficiently particularized if it affect[s] the plaintiff in a personal and individualized way. A harm is "actual or imminent" rather than "conjectural or hypothetical" where it is presently or actually occurring, or is sufficiently

> imminent. The determination of what is imminent is somewhat elastic, but it is fair to say that plaintiffs relying on claims of imminent harm must demonstrate that they face a realistic danger of sustaining a direct injury from the conduct of which they complain.

767 F.3d at 278 (internal quotation marks and citations omitted). Here, Plaintiff alleges it "has had to divert and expend its resources in order to address the harms posed by S.B. 3170's amendments and educate its member companies on the implications of the amendments." (ECF No. 1 ¶ 16.) Defendant, however, argues the "Complaint is silent as to whether providing educational material to [Plaintiff's] member companies is outside the normal scope of business, the level of resources [Plaintiff] has had to divert, and what programs or services were adversely impacted as a result of the alleged diversion." (ECF No. 10-1 at 17–18.)

At the motion to dismiss stage, the Third Circuit has "held that the '[i]njury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that [a] claimant allege [] some specific, identifiable trifle of injury.'" *Blunt*, 767 F.3d at 278 (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) (quoting *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982))). Even general allegations a plaintiff has had to divert resources to address unlawful conduct can satisfy the generous injury-in-fact pleading requirement. For example, in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), a plaintiff "broadly alleged" it "had to devote significant resources to identify and counteract" defendant's allegedly unlawful conduct. Reversing the dismissal for lack of standing, the Supreme Court held "there can be no question that the organization [had] suffered [an] injury in fact." *Id.*; *see also N.J. Civ. Just. Inst. v. Grewal*, Civ. A. No. 19-17518, 2020 WL 4188129, at *4 (D.N.J. July 21, 2020) ("Plaintiffs' allegations that they have been forced to divert their resources toward addressing Section 12.7 through developing educational materials and organizing meetings and educational events are akin to the allegations that the Supreme Court

upheld at the motion-to-dismiss stage in *Havens*."). Plaintiff's allegations, therefore, that it has had to expend and divert resources to address the WARN Act amendments and educate its members on its ramifications, (ECF No. 1 ¶ 16), sufficiently demonstrate an injury-in-fact.

Finally, Defendant contends "[e]ven if it could be argued that Plaintiff has alleged a sufficiently concrete and particularized injury, its claim for direct organizational standing fails because any injury alleged is not causally connected and fairly traceable to any illegal conduct of the Commissioner." (ECF No. 10-1 at 18.) In support of this argument, Defendant reasserts the argument that under the statute "the role played by the Commissioner and, by extension, the Department of Labor is purely remedial." (*Id.* at 19.) As stated previously, however, the Commissioner of the New Jersey Department of Labor and Workforce Development "shall enforce the provisions of" Title 34 of New Jersey Statutes Annotated, which the WARN Act, N.J. Stat. Ann. §§ 34:21-1, *et seq.*, falls under. *See* N.J. Stat. Ann. § 34:1-6. Moreover, Defendant, as Commissioner, plays a role in the enforcement of violations of the WARN Act by informing aggrieved and former employees "as rapidly as possible" of their right to bring an action. N.J. Stat. Ann. § 34:21-5(b)(2)(c). Because Plaintiff alleges injuries deriving from future enforcement of the WARN Act amendments, (ECF No. 1 ¶ 16), the Court concludes it has adequately demonstrated causation necessary for standing. *See Grewal*, 2020 WL 4188129, at *6 ("The alleged harms derive from the future enforcement of Section 12.7. The Attorney General has been tasked with enforcing all provisions of the NJLAD, which includes Section 12.7. For these reasons, the Court finds that [p]laintiffs' claims satisfy the causation requirement of standing.").

Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint on this ground

is **DENIED**.[3]

   C.   **Ripeness**

"At its core, ripeness works 'to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Plains All Am. Pipeline LP v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). "In declaratory judgment cases, we apply a somewhat refined test for ripeness," and analyze "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment." *Id.* (internal quotation marks and citations omitted).

Defendant only challenges the "adversity of the parties' interests" prong of ripeness. (*See generally* ECF No. 10-1 at 25–28.) Defendant argues Plaintiff's claim is not ripe for adjudication because, as argued previously, Defendant's remedial role under the WARN Act demonstrates "there is no threat that the Commissioner will enforce the . . . Act or the challenged amendments against Plaintiff or its constituents." (ECF No. 10-1 at 27–28.) According to Defendant, "[w]here, as here, there has been no enforcement or threat of enforcement of the challenged law by the defendant, and where the defendant has no enforcement authority under the challenged law, the parties lack" adverse legal interests. (*Id.* at 28.) As stated throughout this Opinion, however, Defendant has both enforcement authority pursuant to N.J. Stat. Ann. § 34:1-6 and responsibilities related to enforcement pursuant to § 34:21-5(a). Although Defendant has not yet enforced the newly amended WARN Act, the Court finds Plaintiff has adequately demonstrated an imminent injury related to enforcement. *See Grewal*, 2020 WL 4188129, at *7 (noting that "defendant's

---

[3] Having found Plaintiff has adequately demonstrated direct, organizational standing, the Court will not address Defendant's arguments regarding Plaintiff's lack of associational standing. *See Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 162–63 (3d Cir. 2007) (noting that an organization or association may have standing to bring a suit under either organizational or associational standing).

argument is essentially the same as its argument regarding standing: that [p]laintiffs have failed to demonstrate that enforcement of Section 12.7 is sufficiently imminent" and holding "[f]or the same reasons noted above, the Court finds that [p]laintiffs have demonstrated a sufficiently imminent injury such that the claims are ripe for judicial review"). Moreover, as the district court in *Grewal* noted, preemption questions like Plaintiff's Complaint are "purely legal, and thus further factual development is not required" to determine ripeness.[4] *Id.* (collecting cases). The Court, therefore, finds Plaintiff's Complaint to be ripe for judicial review.

Accordingly, Defendant's Motion to Dismiss on this ground is **DENIED**.

IV. **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: May 20, 2021

---

[4] For these reasons, the Court is also unpersuaded by Defendant's argument regarding the WARN Act amendments' delayed implementation due to the COVID-19 pandemic. (*See* ECF No. 10-1 at 28–29 n.1 (noting the effective dates of the WARN Act amendments have been delayed until after a COVID-19-related executive order is terminated and arguing the order will likely be extended, thereby "further delaying the effective date of the challenged amendments").)