LAW OFFICES
**MORGAN, LEWIS & BOCKIUS LLP**
Richard G. Rosenblatt
502 Carnegie Center
Princeton, New Jersey 08540-6241
+1.609.919.6600
richard.rosenblatt@morganlewis.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **THE ERISA INDUSTRY COMMITTEE,**<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>**ROBERT ASARO-ANGELO, in his official capacity as THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT,**<br><br>　　　　　Defendant. | Civil Action No. 3:20-cv-10094<br><br>Judge Zahid N. Quraishi<br><br>**DECLARATION OF ALIYA ROBINSON IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

I, Aliya Robinson, the undersigned, declare as follows:

1.　　I am the Senior Vice President ("SVP"), Retirement & Compensation Policy for The ERISA Industry Committee ("ERIC"). In that capacity, I have personal knowledge of all of the facts set forth in this declaration.

1

2. ERIC is a nonprofit trade association that represents the interests of large employers with 10,000 or more employees that sponsor health, retirement, and other benefit plans governed by ERISA in their capacity of as sponsors of those benefit plans. ERIC's member companies voluntarily provide benefits through such plans that cover workers and their families across the country, including in New Jersey. In fact, ERIC's membership includes large employers with headquarters and/or a significant number of employees in New Jersey.

3. ERIC's core mission is to advocate for health, retirement, and compensation public policies that support the ability of large employer plan sponsors to administer their benefit plans uniformly and consistently across federal, state, and local levels. This includes lobbying and litigation advocacy for nationally uniform laws regarding employee benefits governed by ERISA, so that ERIC's member companies may lawfully operate under ERISA's protection from a patchwork of different and conflicting state and local laws in addition to federal law.

4. In that regard, New Jersey Senate Bill 3170 ("S.B. 3170"), directly conflicts with ERIC's core mission. Specifically, S.B. 3170 amends the Millville Dallas Airmotive Plant Job Loss Notification Act ("NJ WARN Act") to impose a series of requirements that collectively force employers (like ERIC's member companies) to create or modify severance benefit plans. If each state passed its

own laws requiring an administrative scheme to provide severance benefits, large employers like ERIC member companies would be governed by different laws for different employees depending on the state and could not have a uniform severance benefit plan structured in the way the employer deemed best for its business and its workforce.  S.B. 3170 therefore impedes ERIC's ability to ensure that its member companies are protected under the federal ERISA law from various state and local laws governing employee benefits.

5. To address the harms posed by S.B. 3170 and educate our member companies about the ramifications of this law, ERIC has had to expend and divert time, money and other resources from other critical lobbying and advocacy efforts.

6. For example, in my capacity as and SVP for ERIC, I personally spent dozens of hours in the months after S.B. 3170's enactment (but before ERIC initiated this action) studying S.B. 3170, consulting with outside legal counsel on the potential impact and legality of S.B. 3170, and speaking with ERIC's member companies, especially those with workers in New Jersey, to educate them on the law and its ramifications.

7. I have also supervised other ERIC employees who have spent a significant amount of time, money and resources to address the harm arising from the enforcement of S.B. 3170 by performing task such as:

    a. Reaching out to over 25 other trade associations to discuss S.B. 3170 and how those associations plan to respond to the law;

    b. Organizing and conducting conference calls with other business groups, ERIC member companies in New Jersey, and federal and state policymakers to discuss S.B. 3170;

    c. Preparing and hosting presentations, including on March 25, 2020, June 24, 2020, and August 11, 2020, to educate ERIC's member companies on S.B. 3170, and provide updates on any new information ERIC has learned about the law and when it could potentially be effective;

    d. Reaching out to several national, New Jersey state, and employer trade media outlets, including Reuters, Bloomberg Law, Law 360, New Jersey Business Magazine, and several others, to discuss ERIC's position on the impact and legality of S.B. 3170;

    e. Working with other organizations to lobby to delay the effective date of S.B. 3170 and otherwise amend the law; and

    f. Preparing periodic alerts to send to ERIC's member companies about S.B. 3170.

8. In all, I would estimate that ERIC has incurred thousands in costs through the time, effort, and other resources that my colleagues and I have spent on educating ERIC member companies, the press, and others about S.B. 3170 and its potential impact, as well as the other activities described above.

9. All of those resources could have been directed towards other projects and advocacy efforts that have been ongoing at ERIC, such as:

    a. Meeting with ERIC member companies to understand how ERIC can support their ability to provide and expand their benefits offerings, especially to address challenges relating to the COVID-19 pandemic;

    b. Working on federal and state paid leave initiatives that impact ERIC member companies in every state;

4

c.  Advocating for federal retirement legislation, including to allow employers to provide emergency funds, student loan assistance to their workforce, and addressing multi-employer pension plan reform;

d.  Participating in retirement plan litigation at the federal level through amicus briefs;

e.  Advocating to ensure that state retirement plans do not impose burdens on ERIC member companies that are inconsistent with the federal ERISA law.

10. If allowed to stand, the enforcement of S.B. 3170's amendments to the NJ WARN Act will adversely impact ERIC member companies in ways that go to the heart of ERIC's core mission and make it more difficult for ERIC to successfully advocate for nationally uniform laws regarding severance pay and other employee benefits.

11. Thus, S.B. 3170 impedes ERIC's ability to carry out its mission of promoting nationally uniform laws concerning employee benefit plans covered by ERISA

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 13th day of July, 2021, in Washington, D.C.

*Aliya Robinson*

_____
Aliya Robinson