**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **THE ERISA INDUSTRY COMMITTEE**, | |
| Plaintiff, | |
| v. | Civil Action No. 20-10094 (ZNQ) (TJB) |
| **ROBERT ASARO-ANGELO,** *in his capacity as THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT*, | **OPINION** |
| Defendant. | |

**QURAISHI, District Judge**

     **THIS MATTER** comes before the Court upon a renewed Motion for Summary Judgment (ECF No. 37) filed by Plaintiff The ERISA Industry Committee ("ERIC") and a Cross Motion for Summary Judgment filed by Defendant Robert Asaro-Angelo, in his capacity as the Commissioner of the New Jersey Department of Labor and Workforce Development ("Defendant") (ECF No. 40) pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ERIC filed a memorandum of law in support of its Motion ("Moving Br.", ECF No. 38), a Declaration of Eric Kim ( ECF No. 38-1), and a Statement of Material Facts Not in Dispute ("Plf's SMFND", ECF No. 39).  Defendant filed a brief in support of his Motion and in opposition to ERIC's Motion. ("Opp'n Br.", ECF No. 40-1.)  Defendant also filed a response to ERIC's Statement of Material Facts Not in Dispute ("Def's Resp. SMF", ECF No. 40-2), a Counter Statement of Material Facts Not in Dispute (ECF No. 40-3), a Declaration of Robert Asaro-Angelo (ECF No. 40-4), and a Declaration of Ryan J. Silver

(ECF No. 40-5).  ERIC filed a reply ("Reply Br.", ECF No. 41) and a supplemental declaration of Eric Kim (ECF No. 42)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court will GRANT Defendant's Cross Motion for Summary Judgment and DENY Plaintiff's renewed Motion for Summary Judgment.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

A.    **PROCEDURAL HISTORY**

The Court articulated this matter's procedural history in its prior opinion denying summary judgment without prejudice.  (ECF No. 33 at 4–5.)  In denying summary judgment, the Court ordered the parties to conduct limited discovery on the issue of injury-in-fact for Article III standing.  (*Id*. at 11.)

Plaintiff renewed its Motion for Summary Judgment on March 14, 2023.  (ECF No. 37.)

A.    **UNDISPUTED MATERIAL FACTS**

The instant Motion concerns whether Senate Bill 3170 ("S.B. 3170") is preempted by the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA").  The Court will rely on the facts set forth in its prior decision denying summary judgment regarding S.B. 3170 and its amendments to the Millville Salas Airmotive Plant Job Loss Notification Act ("NJ WARN Act").  The Court finds those facts remain undisputed.

S.B. 3170 is scheduled to become effective April 10, 2023.  (Plf's SMFND ¶ 18; Def's Resp. SMF ¶ 18.)  ERIC is a non-profit trade organization that represents the interest of employers with 10,000 or more employees that sponsor health, retirement, and other benefit plans governed by ERISA.  (Plf's SMFND ¶ 19; Def's Resp. SMF ¶ 19.)

ERIC's mission includes lobbying and litigation advocacy for nationally uniform laws regarding employee benefits as contemplated by ERISA.  (Plf's SMFND ¶ 21; Def's Resp. SMF ¶ 21.)

### B.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.  *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.")

## II.    LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Williams v. Borough of W. Chester*, 891 F. 2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party."  *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)).  "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'"  *Id*. (quoting *Anderson*, 477 U.S. at 250).

3

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id*. (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F. 2d 53, 55 (3d Cir. 1992) (interior quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc*., 54 F. 3d 1125, 1127 (3d Cir. 1995)).

## III.   **DISCUSSION**

To satisfy the "case or controversy" standing requirement under Article III, § 2 of the United States Constitution, a plaintiff must establish that it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180–81 (2000) (discussing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *The Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir. 2000).

Associations may satisfy these elements by asserting claims stemming from injuries they directly sustain. *See*, *e.g., Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299 n.11 (1979); *Pa. Psychiatric. Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d. Cir. 2002) (citing *Babbitt*). Absent injury to itself, an association may pursue claims solely as a representative of its members. *See, e.g., New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1 (1988); *Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc*., 123 F.3d 111 (3d Cir. 1997) By allowing associational standing, courts "recognize[] that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they

share with others." *International Union, United Auto., Aerospace & Agric. Implement Workers v. Brock*, 477 U.S. 274, 290 (1986); s*ee also Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 187 (1951) (Jackson, J., concurring) (noting purpose of joining an association "often is to permit the association . . . to vindicate the interests of all").

Here, ERIC maintains that it has Article III standing to challenge S.B. 3170 under two independent bases: (1) direct organizational standing and (2) associational standing.  (Moving Br. at 14.)  In opposition, Defendant argues that ERIC lacks either.  (Opp'n Br. at 5.)  The Court considers each basis for standing.

### 1.    Direct Organizational Standing

An entity has direct organizational standing when the organization itself suffers injuries as a result of the defendant's allegedly unlawful conduct.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982).  This may occur, for example, when an organization must divert its resources to counteract the allegedly unlawful conduct. *See id*. (finding an injury-in-fact where the organization alleged that the unlawful conduct "perceptibly impaired" its ability to provide counseling and referral services by requiring it to "devote significant resources to identify and counteract the defendant's [unlawful conduct]"); *Fair Hous. Rts. Ctr. in Se. Pa. v. Post Goldtex GP, LLC,* 823 F.3d 209, 214 n.5 (3d Cir. 2016) (finding standing where the organization alleged that its mission had been frustrated "because it has had to divert resources in order to investigate and prosecute the alleged discriminatory practices").

ERIC asserts that it has devoted time and resources to educating and advising member companies about S.B. 3170 and its impact on their workforces and severance pay practices. (Moving Br. at 2.)  ERIC argues that S.B. 3170's amendments frustrate ERIC's mission by imposing a series of requirements that collectively force employers to create or modify severance

benefits plans.   (*Id*. at 16.)   Defendant challenges the sufficiency of ERIC's evidence demonstrating an injury beyond ERIC's mere interest in the subject matter.  (Opp'n Br. at 10.)

The Third Circuit has emphasized the importance of adequate evidence to support organizational injury.  In *Fair Housing Council of Suburban Phila. v. Montgomery Newspapers*, for instance, the Third Circuit concluded that the "[plaintiff-organization's] claim that it suffered palpable injury when it was forced to divert resources [,for purposes of standing,] fail[ed] for lack of proof."  141 F.3d 71, 78 (3d Cir. 1998).  Specifically, the court found that "[a]t the summary judgment stage, bare allegations of injury. . .are not enough to establish standing."  *Id*.

Similarly, here, ERIC has failed to identify any evidence as to the actual time spent or costs associated with diverting resources to educate its member companies on S.B. 3170.  Annette Guarisco Fildes ("Fildes"), ERIC's Chief Executive Officer, testified that upon learning of the new legislation, they had "numerous conversations with [their] member companies about the compliance impact on the companies as well as the legal analysis[.]"  (Fildes Deposition ("Fildes Dep.") 19:1–4, ECF No. 40-1).  When asked if she could quantify the time ERIC spent in response to work related to the amendments, Fildes testified that "several people on the staff who worked on it for many, many hours, each of them over many months. So [had] to be hundreds of hours total for the organization."  (*Id*. at 19:10–16.)  She did not identify a number of hours, nor could she indicate the dates staff worked in response to the amendments.  (*Id*. at 19:16–17, 21:17–21.) ERIC has likewise not identified any projects, activities, or specific meetings that it held as a result of S.B. 3170.  Rather, ERIC generically asserts that it has had to expend and divert time, money, and other resources to address the harm posed by S.B. 3170.  (Moving Br. at 10.)  ERIC's bald assertions, without facts, is insufficient at this stage to establish an injury for purposes of Article III standing.

Furthermore, ERIC's other core operations already *include* regularly counseling and educating member companies on changes and updates in the laws that it has tracked and analyzed for potential effects on members' operations.   (Fildes Dep. 15:4–25, 36:11–14, 42:12–16.) Alleging expenses in the pursuit of an organization's own agenda, however, does not amount to an injury for purposes of standing.  *Blunt*, 767 F.3d at 288.

> Without concrete and demonstrable injury to the groups' activities, however, evidence of a drain on the organizations' resources does not amount to an injury-in-fact for standing purposes. . .[A]n organization's expenses in the pursuit of its agenda are self-effectuating and [claiming them as injury-in-fact] would allow any advocacy group to manufacture standing by choosing to expend resources to advocate against policy decisions made by the federal government.

*Id*. (quoting *Center for Law and Education v. United States Department of Education*, 315 F. Supp. 2d 15, 24–25 (D.D.C. 2004)).  Accordingly, ERIC has not demonstrated how the steps it took in response to S.B. 3170 were outside the scope of its normal operations.[1]

Additionally, ERIC claims that S.B. 3170 directly conflicts with its mission, which is to promote nationally uniform laws regarding employee benefits as contemplated by ERISA on behalf of its member companies.  (Moving Br. at 16.)  Defendant argues that this type of "injury" is precisely the type of injury the Supreme Court rejected in *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) when it held that the Sierra Club's special interest in promoting and protecting our "natural heritage from man's depredations" is insufficient for standing.  (Opp'n Br. at 10) (citing 405 U.S. at 739.))  As other courts have recognized, the Supreme Court considered and rejected

---

[1] ERIC argues that Article III standing does not require an organization to undertake activities outside its normal operations or divert resources toward new and different goals, citing to *Scott v. Schedler*, 771 F.3d 831, 836–39 (5th Cir. 2014).  *Scott*, however, is distinguishable from the instant matter.  In *Scott*, the Fifth Circuit held that the plaintiff-organization, "the NAACP[,] [] suffered injury in fact. . . when the NAACP would have still devoted resources to counteract [defendant's] allegedly unlawful practices[.]"  *Id*. at 837.  The Fifth Circuit did not determine whether such a diversion of resources was outside the scope of the NAACP's normal operations.

the idea in *Sierra Club* that lobbyist or advocacy groups have standing when they assert no injury other than an injury to its advocacy. *See, e.g., Center for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162, n.4 (D.C. Cir. 2005) (explaining that "in *Sierra Club*, the Supreme Court recognized that to hold that a lobbyist/advocacy group had standing to challenge government policy with no injury other than injury to its advocacy would eviscerate standing doctrine's actual injury requirement[.]")

In short, ERIC's continued claims that S.B. 3170 directly conflicts with its mission to promote nationally uniform laws regarding employee benefits, is not enough. S.B. 3170 may be legislation that runs contrary to that interest, but such a professed "injury" is insufficient under *Sierra Club*. *See* 405 U.S. at 739. Accordingly, the Court finds, based on this record, that ERIC lacks direct organizational standing.[2]

## 2. *Associational Standing*

When an association or organization sues on behalf of its members—as here—"it is claiming that it has representational standing." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 279 (3d Cir. 2014). An entity has associational or representational standing when:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

---

[2] The Court recognizes that at the Motion to Dismiss stage, it found that ERIC had direct organizational standing. (*See* ECF No. 17 at 11.) Specifically, the Court held that "Plaintiff's allegations. . .that it had to expend and divert resources to address the WARN Act Amendments and educate its members on its ramifications sufficiently demonstrate[d] an injury-in-fact." (*Id.*) At the pleading stage, however, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations omitted).

*Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 405 (3d Cir. 2005) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

To meet the first prong, the association must allege facts demonstrating that its members "would have standing in their own right." *Goode v. City of Phila.*, 539 F.3d 311, 325 (3d Cir. 2008). In practice, this means that the association "must 'make specific allegations establishing that at least one identified member had suffered or would suffer harm.'" *Blunt*, 767 F.3d at 280 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). "Under the second prong, the interests that the association seeks to protect must be germane to its purpose." *American Chiropractic Ass'n v. American Specialty Health Inc.*, 625 F. App'x. 169, 176 (3d Cir. 2015). Under the third prong, the association must demonstrate that neither its claims nor its requested relief "'requires the participation of individual members in the lawsuit.'" *Id.* (quoting *Hunt*, 432 U.S. at 343). While the need for "some" level of individual participation "does not necessarily bar associational standing," such standing is permitted only where the claims do not require "a fact-intensive-individual inquiry." *Pa. Psychiatric Soc'y* 280 F.3d at 283, 286. Because claims for monetary relief often require this individual inquiry, associations "generally" cannot sue for monetary damages. *Id.* at 284; *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996).

Where associations seek injunctive or declaratory relief, however, participation of the individual members "may be unnecessary." *Pa. Psychiatric Soc'y*, 280 F.3d at 284 n.3.

Here, ERIC argues that it has associational standing under Article III. (Moving Br. at 19.) Specifically, ERIC contends that it has approximately 60 member companies with operations in New Jersey, many of which will be subject to S.B. 3170's severance requirements. (*Id.*) ERIC additionally maintains that the ERISA preemption interest is germane to and at the core of ERIC's

mission.  (*Id.* at 20.)   Further, ERIC argues that because it seeks prospective declaratory and injunctive relief, participation of its members in this lawsuit is not required.  (*Id.*)

In opposition, Defendant argues that ERIC's Article III standing claim fails at the first step under *Hunt*.  (Opp'n Br. at 15.)  Defendant contends that ERIC has failed to identify at least one member who has suffered a particular injury.  (*Id.* at 16.)  Further, Defendant argues that even if ERIC had identified at least one member, its claim for associational standing also fails under *Hunt*'s third step.  (*Id.*)  Defendant maintains that to the extent ERIC alleges its member companies are harmed or have to implement new administrative schemes in response to S.B. 3170, the participation of those member companies is necessary to develop a complete factual record.  (*Id.* at 17.)

In reply, ERIC reiterates that it has associational standing on behalf of its members because (1) it has approximately 60 member companies with operations in New Jersey, many of which will be subject to SB 3170's severance requirements, (2) the ERISA preemption interest is germane to ERIC's mission and (3) because ERIC seeks declaratory and injunctive relief, participation of individual member companies in this lawsuit is not required.  (Reply Br. at 19.)  ERIC insists that it is not required to identify members by name to satisfy Article III's associational standing requirement.  (*Id.* at 20.)

Defendant cites to *Summers v. Earth Island Inst.*, 555 U.S. 488, 497–99 (2009) for its argument that an association must identify at least one member who has suffered a specific harm.  (Opp'n Br. at 15.)  Defendant maintains that in *Summers*, the Court held that even a speculation of harm that is "certainly possible" does not suffice for standing.  (*Id.*)  In reply, Plaintiff asserts that *Summers* did not address whether specifically identifying or naming a member is required to

show standing.  (Reply Br. at 20.)  Rather, Plaintiff maintains *Summers* focused on whether the identified members actually suffered harm.  (*Id*.)

The Court agrees with Defendant's interpretation.  In *Summers*, the United States Supreme Court addressed whether an environmental organization had standing to enjoin the United States Forest Service from applying regulations to exempt a salvage sale of timber on fire-damaged federal land from the notice, comment, and appeal process provided for in the Forest Service Decisionmaking and Appeals Reform Act.  555 U.S. at 491.  The Court found that the plaintiff-organization had failed to show it had standing where (1) two affidavits addressing injury to members were irrelevant following a settlement of their portion of the lawsuit; (2) the remaining affidavit failed to establish that any member had concrete plans to visit a site where the regulations at issue would be applied; (3) additional affidavits were submitted after judgment; and (4) the organization could not establish procedural standing without demonstrating a concrete interest that was affected.  *Chamber of Commerce for Greater Phila. v. City of Phila*., Civ. No. 17-1548, 2017 WL 11544778, at *3 (E.D.Pa. May 30, 2017) (discussing *id*. at 494-97).  The *Summers* Court further observed that while it was certainly possible that at least one individual would likely meet the criteria for injury-in-fact, such speculation does not suffice.

> "Standing," [the Court] [has] said, "is not 'an ingenious academic exercise in the conceivable' . . . [but] requires . . . a factual showing of perceptible harm."  In part because of the difficulty of verifying the facts upon which such probabilistic standing depends, the Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm[.]

*Id*. at 499 (quoting *Defenders of Wildlife*, 504 U.S. at 566) (third amendment in original).

Here, ERIC attempts to avoid the directive set out in *Summers*, by arguing instead that its members' identities are protected by associational privilege, citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958).  (Reply Br. at 20; Fildes Dep. 23:24–25:9.)

11

The Supreme Court has recognized the freedom to associate as a fundamental right protected by the Constitution. *NAACP*, 357 U.S. at 460–61. By definition, it is the freedom to associate for the purposes of engaging in activities protected by the First Amendment, such as speech, assembly, petitioning the government, and the exercise of religion. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).

The Court in *NAACP* held that membership lists of groups engaged in political advocacy were privileged under the First Amendment. 357 U.S. at 460–63. There, the Court found that the NAACP made an "uncontroverted showing that on past occasions[,] revelation of the identity of its rank-and-file members ha[d] exposed th[ose] members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostilities." *NAACP*, 357 U.S. at 462. The Court held that under those circumstances, compelled disclosure of NAACP's members was likely to adversely affect the ability of the NAACP and its members to pursue their collective efforts "to foster beliefs which they admittedly have the right to advocate." *Id*. at 463. Accordingly, should there be a showing of reasonable probability that compelling disclosure of an organization's member list "will lead to some form or specter of harassment, threat, or reprisal of the organization and/or its members, such commanded disclosure runs afoul of the First Amendment." *Sherwin-Williams Co. v. Spitzer*, Civ. No. 1:04CV185, 2005 WL 2128938, at *4 (N.D.N.Y. Aug. 24, 2005) (citations omitted). Typically, the association privilege has been enforced to protect an organization's internal activities and documents, such as lists of members, contributors, and political affiliations, when the association has made a showing that compelled disclosure will adversely affect the organization's ability to advocate or cause members to withdraw or expose them to threats, reprisal, and harassment. *Wyoming v. United States Dep't of Agric.*, 239 F. Supp. 2d 1219, 1237 (D.Wyo. 2002) (finding that if a request of internal

12

association activities occurs, federal courts implicitly assume that the party has made a prima facie case for the privilege). Once there is a prima facie showing of hostility and adverse impact, the burden shifts to the party seeking the disclosure to demonstrate a compelling need for the information that will survive "exacting scrutiny." *In re Grand Jury Proceedings; A Grand Jury Witness v. United States*, 776 F.2d 1099, 1102–03 (2d Cir. 1985) (citing *Bates v. City of Little Rock*, 361 U.S. 516, 524 (1960) and *Buckley v. Valeo*, 424 U.S. 1, 64 (1976)).

Here, ERIC has presented no evidence to demonstrate that disclosure of its membership list—much less the identity of a single, injured member for the purposes supporting ERIC's standing to bring its claims—would adversely impact its members. Further, ERIC has failed to demonstrate any hostility related to associating with ERIC. The Court therefore finds that the associational privilege does not shield ERIC from disclosing its members for purposes of standing.

ERIC separately relies upon *National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) to argue that it need not identify a particular member because it is relatively clear that at least one of its members will be adversely impacted by the impact of SB 3170. There, the Ninth Circuit considered whether *Summers*, in that particular situation, required the plaintiff-organization to specifically identify an injured member. The court held that

> [w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury, we see no purpose to be served by requiring an organization to identify by name the member or members injured.

*Id*. at 1041.

Based on the record before the Court, it is not clear that one of ERIC's members will be adversely affected, given that ERIC has failed to show that it has any members located in New Jersey that will be impacted by S.B. 3170. Whether ERIC's members will be adversely affected

by S.B. 3170 is, in fact, merely speculative.  Accordingly, because ERIC has failed to identify any member who will suffer harm, ERIC lacks associational standing.  *See Chamber of Commerce for Greater Phila.,* 2017 WL 11544778, at *3 (concluding that "*Summers* and Third Circuit precedent require the identification of a member who has suffered or will suffer harm in cases brought by an association on behalf of its members.")

## IV.    **CONCLUSION**

For the reasons stated above, ERIC lacks Article III standing. The Court will therefore GRANT Defendant's Cross Motion for Summary Judgment and DENY ERIC's Motion for Summary Judgment.  An appropriate order will follow.


**Date: April 6, 2023**


s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**